# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK, SR., | Case No. 1:18-cv-01620-AWI-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART** |
| v. | |
| THE VICTUS GROUP, INC., d/b/a Sierra Sky Ranch | (Doc. 11) |
| Defendant. | **OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On May 31, 2019, Plaintiff Peter Strojnik, Sr. filed a motion for default judgment[1] against Defendant The Victus Group, Inc. d/b/a Sierra Sky Ranch. (Doc. 11.) No opposition to Plaintiff's motion was filed. The Court has reviewed the motion and supporting documentation and determined that the matter was suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the motion was deemed submitted on the papers and no hearing was scheduled.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for

---

[1] Plaintiff filed two copies of the motion in the same document. (*See generally* Doc. 11.) Plaintiff also filed a third copy of the motion on June 6, 2019. (Doc. 13.) Thus, the Court will consider only the first copy of the motion, (Doc. 11 at 1–15, 31–32), as Plaintiff's motion for default judgment.

default judgment be GRANTED IN PART and that Plaintiff be awarded the sum of $4,447.

## II. FACTUAL BACKGROUND

On November 8, 2018, Plaintiff filed a complaint alleging claims for negligence and violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the California Unruh Act, California Civil Code § 51 *et seq.*; and the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.* (Doc. 1.) The complaint seeks an award of statutory, compensatory and punitive damages, costs of suit, and injunctive relief.[2] *Id.* Plaintiff alleges that he "walks with difficulty and pain and requires compliant mobility accessible features," and uses a wheelchair, (*Id.* ¶¶ 4, 14), and the property that is the subject of this suit, Sierra Sky Ranch ("the Property") presents numerous barriers that interfere with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility (*Id.* ¶ 10).

Defendant was served with the complaint on March 20, 2019. (Doc. 5.) To date, Defendant has not responded to the complaint.

Plaintiff requested that the Clerk enter default against Defendants on May 13, 2019, (Doc. 7), which was entered on May 15, 2019. (Doc. 8.) On May 31, 2019, Plaintiff filed a motion for default judgment against Defendant, which is currently pending before the Court. (Doc. 11.)

On June 3, 2019, the Court entered a minute order directing Defendant to file its response in opposition to the motion by no later than July 15, 2019, and allowing Plaintiff to file an optional reply brief by no later July 29, 2019. (Doc. 12.) The Court directed Plaintiff to file proof of service of the minute order on Defendant by June 15, 2019. (*Id.*) Plaintiff filed proof of service on June 18, 2019, stating that he served the minute order on Defendant's registered agent on June 13, 2019. (Doc. 14.) Defendant has not filed a response in opposition to the motion and no other pleadings were filed by the July 29, 2019 deadline.

## III. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following

---

[2] The complaint also requests attorney's fees. (*See, e.g.,* Doc. 1 at 4.) Plaintiff is not entitled to attorney's fees since he is proceeding pro se, and Plaintiff clarifies in his motion for default judgment that he is not requesting attorney's fees. (Doc. 11 at 12.)

the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.  Analysis**

    **1.  The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.  Prejudice to Plaintiff if Default Judgment is Not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendant participates and makes an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

### b. Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

#### 1. Title III of the ADA

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id.* at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff suffers from physical impairments which "substantially limit his major life activities," "walks with difficulty and pain and requires

4

compliant mobility accessible features," and uses a wheelchair, and is thus "physically disabled" as defined by the applicable California and federal laws. (Doc. 1 ¶¶ 3–4, 14.) As a hotel, the Property is a facility of public accommodation. (*Id.* ¶ 5.) Plaintiff alleges that Defendant owns, operates, or leases the Property; thus, it is allegedly liable for the Property's noncompliance with the ADA. (*Id.*)

Plaintiff does not allege in the complaint that he visited the Property himself. (*See generally id.*)[3] Instead, Plaintiff alleges he intended to visit the Property but Defendant's booking website failed to describe accessibility features in sufficient detail and failed to make reservations for accessible guest rooms available, which deterred Plaintiff from visiting the Property. (*Id.* ¶¶ 11, 19–20.) The complaint alleges Plaintiff intends to visit the Property in the future when the Property becomes fully compliant with the ADA. (*Id.* ¶ 12.) Plaintiff alleges his review of the booking website and photographs of the Property made him aware of specific accessibility barriers at the Property that are in violation of the ADA. (*Id.* ¶¶ 21–22, 24.) Plaintiff describes the architectural accessibility barriers in an addendum to the complaint. (*See id.* at 24–28.)

Plaintiff alleges that Defendant failed to provide barrier-free access to the Property in the following ways: (1) the booking website does not identify and describe accessibility features in sufficient detail, or make reservations for accessible guest rooms available, in violation of 28 C.F.R. § 36.302(e); and (2) the following parts of the Property are inaccessible for Plaintiff as an individual who is mobility-limited and uses a wheelchair: (a) the pool; (b) the parking lot; (c) the entry door; (d) the check-in-counter; (e) handrails throughout the Property (configured in an inaccessible manner); (f) the bar in the lobby; (g) the bathrooms; and (h) the mattresses and beds. (*See id.*) Plaintiff alleges these aspects of Defendant's property are inaccessible to him because he uses a wheelchair and otherwise has limited mobility. (*Id.* ¶ 14.)

Plaintiff's allegations that he was deterred from visiting the Property based on knowledge of noncompliance with the ADA, and that he plans to visit the Property once it becomes ADA-compliant, are sufficient to establish standing under the ADA. *See Civil Rights Education and*

---

[3] Plaintiff contends in the motion for default judgment that he "subsequently visited the hotel to independently verify that it was, at least on the outside, suitable to accommodate his disability, and discovered that the hotel was replete with numerous accessibility barriers." (Doc. 34 at 3.)

*Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093, 1099–1100 (9th Cir. 2017). Plaintiff further alleges that the removal of the accessibility barriers described above is "readily achievable." (Doc. 1 ¶ 26.) As these facts are taken as true regarding Defendant following its entry of default, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

### 2. Unruh Act and CDPA

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code, § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code, § 51.5. The Unruh Act and CDPA both incorporate an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act and the CDPA. Cal. Civ. Code, §§ 51(f), 54.1(d).

Here, Plaintiff alleges that Defendants denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Doc. 1 ¶¶ 10, 24.) For purposes of pleading his claims, Plaintiff incorporates his prior allegations regarding the barriers he encountered at the Property, (*Id.* ¶¶ 28, 41), and alleges that Defendant denied Plaintiff "equal access to its public accommodation on the basis of his disability as outlined above." (*Id.* ¶¶ 36, 42.)

Although substantially boilerplate, these claims are sufficiently pled. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment); *see also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same). Further, because Plaintiff's complaint properly alleges a prima facie claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim and a CDPA claim. *See Brooke v. C & S Chong Investment Corporation*, No. 1:17-cv-01583-LJO-JLT, 2018 WL 1704628, at *4 ("Because Plaintiff alleges a cognizable ADA claim, she has also established the defendant is liable for violating the Unruh Act [and] the California Disabled

Persons Act.").

### 3. Negligence

Under California law, negligence is presumed[4] if the plaintiff establishes the following elements: "(1) the defendant violated a statute of a public entity; (2) the violation was the proximate cause of the plaintiff's injury; (3) the injury resulted from an occurrence the nature of which the statute was designed to prevent; and (4) the plaintiff suffering the injury was among the class of persons for whose protection the statute was adopted." *Saylor v. Zeenat, Inc.*, No. Civ.S02-863WBS/DAD, at *2 (E.D. Cal. Aug. 13, 2002) (citing *Galvez v. Fields*, 88 Cal.App.4th 1410, 1420 (2001)).

Here, Plaintiff has sufficiently alleged that Defendant violated the ADA; the violation proximately caused Plaintiff to be deterred from visiting the Property; the injury is one the ADA was designed to prevent; and Plaintiff, as a disabled person, is among the class of persons for whose protection the ADA was adopted. *See Saylor v. Zeenat, Inc.*, No. Civ.S02-863-WBS/DAD, 2002 WL 33928621, at *2 (E.D. Cal. Aug. 13, 2002).

The complaint sufficiently states Plaintiff's claims under Title III of the ADA, the Unruh Civil Rights Act, the CDPA, and negligence per se, and there appears to be merit to the substantive allegations. As such, these *Eitel* factors weigh in favor of default judgment.

### c. Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff's complaint seeks costs in the amount of $447, and statutory damages under the Unruh Act and CDPA in the amount of $4,000 and $1,000 per encounter, respectively. Plaintiff's motion for default judgment, however, seeks $32,000 in statutory damages and $15,000 in punitive damages. (Doc. 11 at 10.)

---

[4] The Court construes Plaintiff's claim as a claim for negligence per se based on violations of the ADA, as the Ninth Circuit has directed that district courts liberally construe pro se pleadings. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

7

1    As set forth below, the Court concludes that Plaintiff has not proved any damages beyond
2    the statutory minimum under the Unruh Act of $4,000, which is not a relatively significant amount
3    of money, and thus this factor weighs in favor of granting default judgment.

####          d.     Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendants have submitted nothing to contradict the well-pled allegations in the complaint. Accordingly, this factor favors entry of default judgment.

####          e.     Default Due to Excusable Neglect

Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. The Court has no evidence before it establishing that Defendants' failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

####          f.     Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 2.     Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

####          a.     Injunctive Relief

Plaintiff's complaint and motion for default judgment seek an injunction requiring Defendants to make several changes and accommodations at the Property. (*See, e.g.,* Doc. 1 at 11–28)[5]. As the factual allegations in the Complaint are taken as true, Plaintiff is entitled to

---

[5] Although the changes requested by Plaintiff are not a model of clarity, construed liberally, they can be summarized as requesting that the Property change certain aspects of its layout to become accessible to him as an individual who is mobility-limited and uses a wheelchair. Because Defendant failed to respond to the complaint, Plaintiff's factual allegations are taken as true. *See Televideo Sys., Inc.*, 826 F.2d at 917.

injunctive relief as requested pursuant to both state and federal law.[6] *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

### b. Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to at least $4,000 in statutory damages. (Doc. 1 ¶ 40(e).) Plaintiff also asserts that he is entitled to at least $1,000 in statutory damages under the CDPA. (*Id.* ¶ 46(e).)

Plaintiff has sufficiently alleged facts indicating that he experienced one encounter of barriers at the Property that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property (his review of the booking website that deterred him from visiting the Property). Thus, Plaintiff is entitled to an award of $4,000 in statutory damages. Plaintiff cannot recover under both the Unruh Act and the CDPA, however. *See Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1074 (N.D. Cal. Jan. 3, 2014) (citing *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 632 (2009)).

The Court further recommends that punitive damages are inappropriate, and Plaintiff has not proved any damages separate from, or in addition to, the minimum statutory damages he is entitled to under the Unruh Act. *See Peters v. CJK Associates, LLC*, No. Civ.S 03 1388 LJJ/KJ, 2003 WL 24205920, at *3 (E.D. Cal. Oct. 29, 2003) (in action claiming negligence and violations of ADA, Unruh Act, and CDPA, finding that as a matter of law, plaintiff was not entitled to punitive damages in addition to Unruh Act statutory damages); *Doran v. Embassy Suites Hotel*, No. C-02-1961 EDL, 2002 WL 1968166, at *4 (N.D. Cal. Aug. 26, 2002) (same); *see also*

---

[6] Plaintiff also requests the Court order "closure" of Sierra Sky Ranch until Defendant fully complies with the Unruh Act. (Doc. 1 ¶ 40(e).) Plaintiff has provided no legal authority, and the Court can find no legal authority, for ordering Defendant to cease operations at Sierra Sky Ranch until coming into compliance with the Unruh Act, and the Court recommends that this request be denied.

*Televideo Sys., Inc. v. Heidenthal*, 826 F.2d at 917–18.

        **c.**       **Attorney's Fees and Costs of Litigation**

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code, § 55, also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1. Here, however, Plaintiff is proceeding *pro se* and is not entitled to attorney's fees. Plaintiff requests $447 in costs and expenses in filing the lawsuit, which the Court finds reasonable.

## IV.    RECOMMENDATION

Based on consideration of the motion for default judgment, (Doc. 11), and the complaint, (Doc. 1), the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment be GRANTED IN PART as specified below;
2. Judgment be entered in Plaintiff's favor and against Defendant the Victus Group, Inc. d/b/a Sierra Sky Ranch;
3. Defendant be found and declared to be in violation of Title III of the Americans with Disabilities Act;
4. Plaintiff be awarded statutory damages under the Unruh Act in the amount of $4,000;
5. Plaintiff be awarded reasonable costs of suit in the amount of $447; and
6. Defendant be ordered to make the following modifications to the Property known as Sierra Sky Ranch, located at 50552 Rd 632 in Oakhurst, California, such that each item is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24:
   a. The booking website shall be changed to identify and describe accessibility features in sufficient detail, and make reservations for accessible guest rooms available, in compliance with 28 C.F.R. § 36.302(e); and
   b. The pool, parking lot, entry door, check-in-counter, handrails, bar in the lobby, bathrooms, walkways, and mattresses and beds shall be made and

maintained in a condition that is ADA-complaint and accessible to individuals who are mobility-limited and use a wheelchair.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant at Defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **September 9, 2019**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE